**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| MARK SCHOONOVER, | : | Case No. 1:22-cv-767 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| HAMILTON COUNTY, et al., | : | |
| | : | |
| Defendants. | : | |

---

### ORDER AND OPINION

---

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 12) and Plaintiff's Motion to Amend (Doc. 15). Plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss (Doc. 16), to which Defendants failed to timely reply in support of their motion. *See* S.D. Ohio Civ. R. 7.2(a)(2). Additionally, Defendants filed a Response in Opposition to Plaintiff's Motion to Amend (Doc. 19), to which Plaintiff filed a Reply in Support (Doc. 21). Thus, these matters are ripe for the Court's review. For the reasons below, Defendants' Motion to Dismiss (Doc. 12) is **DENIED AS MOOT** and Plaintiff's Motion to Amend (Doc. 15) is **GRANTED**.

### FACTS AS ALLEGED

The Hamilton County Sheriff's Office hired Plaintiff Mark Schoonover in 1981. (Am. Compl., Doc. 11, ¶¶ 4, 8.) Plaintiff rose through the ranks and eventually became the Sheriff's Office's Chief Deputy. (*Id.*) As Chief Deputy, Plaintiff managed the day-to-day operations of the Sheriff's Office's Court Services, Enforcement, and Corrections

Divisions. (*Id.*) Additionally, as Chief Deputy, Plaintiff reported to the Hamilton County Sheriff, who was Jim Neil at the time. (*Id.*)

While Plaintiff performed as Chief Deputy, Defendant Charmain McGuffey acted as the Sheriff's Office's Major of Jail and Court Services. (Am. Compl., Doc. 11, ¶ 10.) In January 2017, an employee filed a complaint against McGuffey, alleging that she promoted a hostile work environment. (*Id.*) Following an internal investigation, Plaintiff recommended that McGuffey be terminated. (*Id.*) Then-Sheriff Neil offered McGuffey a replacement position as an alternative to termination. (*Id.* at ¶ 11.) McGuffey declined the offer and was terminated around June 2017. (*Id.*)

Following this incident, McGuffey filed a lawsuit against the Sheriff's Office, alleging that the Sheriff's Office retaliated against her and terminated her based on her gender in violation of Title VII and the Ohio Revised Code. (Am. Compl., Doc. 11, ¶ 12.) Plaintiff was deposed in connection with McGuffey's lawsuit. (*Id.*) During his deposition, Plaintiff made unfavorable statements about McGuffey. (*Id.*)

In November 2020, Hamilton County elected McGuffey as Sheriff. (Am. Compl., Doc. 11, ¶ 14.) Soon thereafter, McGuffey notified Plaintiff that his employment would not continue during her tenure. (*Id.*) And, when McGuffey's term as Sheriff began, Plaintiff was terminated. (*Id.* at ¶ 15.) McGuffey failed to provide a reason for Plaintiff's termination. (*Id.*)

Plaintiff now brings claims against Defendants Hamilton County, through its Board of County Commissioners ("BOCC"), and Sheriff Charmaine McGuffey, in her official and personal capacities, for (1) First Amendment retaliation, (2) retaliation in

2

violation of Title VII and the Ohio Revised Code, and (3) sex discrimination in violation

of Title VII and the Ohio Revised Code. (Am. Compl., Doc. 11, ¶¶ 17-33.)

## LAW & ANALYSIS

Defendants moved to dismiss this action on May 25, 2023. (Motion to Dismiss,

Doc. 12.) Shortly thereafter, Plaintiff sought leave to file a second amended complaint.

(Motion to Amend, Doc. 15.) An amended complaint "supersedes the original pleading,

thus rendering motions to dismiss moot." *O'Malley v. NaphCare, Inc.*, No. 12-cv-326, 2013

U.S. Dist. LEXIS 50970, at *2 (S.D. Ohio Apr. 9, 2013) (citing *Yates v. Applied Performance*

*Techs., Inc.*, 205 F.R.D. 497, 499 (S.D. Ohio 2002)). So, for convenience, the Court will first

consider Plaintiff's Motion to Amend (Doc. 15).

### I. Motion to Amend

Under Federal Rule of Civil Procedure 15(a)(2), if a party cannot amend its

pleading as a matter of course under subsection (1), then "a party may amend its

pleadings only with the opposing party's written consent or the court's leave." Courts

are authorized to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule

15 is interpreted liberally and in favor of allowing parties to amend their pleadings. *See*

*Forman v. Davis*, 371 U.S. 178, 182 (1962). Courts consider several factors in deciding

whether to allow a party to amend a pleading, such as "[u]ndue delay in filing, lack of

notice to the opposing party, bad faith by the moving party, repeated failure to cure

deficiencies by previous amendments, undue prejudice to the opposing party, and futility

of amendment." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458 (6th Cir. 2001) (quotations

omitted).

3

Plaintiff moves to amend his Amended Complaint to include new allegations and a new claim against Defendants. (*See* Proposed Second Am. Compl., Doc. 15-1, ¶¶ 13, 15, 31, 33-40.) The Proposed Second Amended Complaint alleges that (1) during his deposition for McGuffey's lawsuit, Plaintiff specifically testified about discrimination in the Sheriff's Office and the alleged use of excessive force at the Hamilton County Jail, (2) McGuffey removed Plaintiff from his role as a Special Deputy, and (3) McGuffey terminated eight other male employees at the beginning of her term. (*Id.* at ¶¶ 13, 15, 31.) Plaintiff also proposes to bring a new claim for "Wrongful Discharge in Violation of Public Policy" against Defendants. (*Id.* at ¶¶ 33-40.)

Defendants argue that Plaintiff's motion should be denied because Plaintiff's proposed amendments are futile. "A motion for leave to amend may be denied for futility if the court concludes that the pleading as amended could not withstand a motion to dismiss." *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (quotations omitted). Defendants argue that amending the Amended Complaint would be futile because Plaintiff's Proposed Second Amended Complaint could not withstand a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6). (*See* Defendant's Response in Opp., Doc. 16.)

A Rule 12(b)(6) motion tests the plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). When reviewing a pleading under Rule 12(b)(6), courts accept all allegations of material fact as true and construe such allegations in the light most favorable to the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). Courts are not bound to do the same for a complaint's legal

4

conclusions. *Id.* at 555. A claim for relief must be "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). That is, the complaint must lay out enough facts for a court to reasonably infer that the defendant wronged the plaintiff. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.,* 727 F.3d 502, 502 (6th Cir. 2013). A complaint that lacks such plausibility warrants dismissal. *Iqbal,* 556 U.S. at 678.

Plaintiff brings the following claims against Defendants in its Proposed Second Amended Complaint: (1) First Amendment retaliation, (2) retaliation in violation of Title VII and the Ohio Revised Code, (3) sex discrimination in violation of Title VII and the Ohio Revised Code, and (4) termination in violation of public policy. (Proposed Second Am. Compl., Doc. 15-1, ¶¶ 17-40.) The Court will review each claim under the Rule 12(b)(6) standard to determine the proposed pleading's futility.

### a. First Amendment Retaliation

Plaintiff's Proposed Second Amended Complaint first brings an 18 U.S.C. § 1983 claim for First Amendment retaliation against Defendants. (Proposed Second Am. Compl., Doc. 15-1, ¶¶ 17-25.) Defendants argue that this claim would fail under Rule 12(b)(6) against the BOCC because the BOCC cannot be held liable for the Sheriff's actions. (Defendants' Response in Opp., Doc. 19, Pg. ID 105.) Defendants also maintain that this claim fails against both Defendants because Plaintiff cannot establish a prima facie case of First Amendment retaliation. (*Id.* at Pg. ID 99-101.) The Court will address each argument in turn.

### i. BOCC Liability

Defendants argue that Plaintiff's First Amendment retaliation claim fails against

5

the BOCC. (Defendant's Response in Opp., Doc. 19, Pg. ID 106; Motion to Dismiss, Doc. 12, Pg. ID 44-46.)[1] Defendants maintain that the BOCC is limited to controlling the county's financial matters and thus has no responsibility over the Sheriff's Office for any unconstitutional actions it may engage in. (*Id.*)

A lawsuit may be brought against a county's commissioners for a county's alleged violation of an individual's rights under 18 U.S.C. § 1983. *See McGuire v. Ameritech Servs.*, 253 F. Supp. 2d 988, 1015 (S.D. Ohio 2003). An agency may be liable under § 1983 for its employees' unconstitutional conduct only where the agency itself caused the constitutional injury through a government policy or custom. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 694 (1978)). A plaintiff may show the existence of an unlawful policy or custom by demonstrating "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* (citation omitted).

Defendants do not argue that Plaintiff has failed to satisfy the *Monell* requirements. Rather, Defendants simply maintain that the BOCC has no responsibility over the Sheriff's Office and thus cannot be liable under § 1983. (Defendant's Response in Opp., Doc. 19, Pg. ID 106; Motion to Dismiss, Doc. 12, Pg. ID 44-46.) But, Plaintiff is suing

---

[1] In making this argument, Defendants incorporate the argument presented in their Motion to Dismiss briefing. (*See* Defendants' Response in Opp., Doc. 19, Pg. ID 106; Motion to Dismiss, Doc. 12, Pg. ID 44-46.) Plaintiff does the same. (*See* Plaintiff's Reply in Support, Doc. 21, Pg. ID 124; Plaintiff's Response in Opp., Doc. 16, Pg. ID 82-84.)

6

Hamilton County through the BOCC. (*See* Proposed Second Am. Compl., Doc. 15-1, ¶ 5.) So, the concern here is whether Hamilton County—not the BOCC—has some sort of custom or policy that has led to the deprivation of Plaintiff's rights. *See McGuire*, 253 F. Supp. 2d at 1015. Defendants have not addressed whether Plaintiff has adequately pled the existence of a county custom or policy that led to the deprivation of his constitutional rights. (*See* Defendant's Response in Opp., Doc. 19, Pg. ID 106; Motion to Dismiss, Doc. 12, Pg. ID 44-46.) Thus, Defendants have not presented an argument to warrant the dismissal of Plaintiff's First Amendment retaliation claim against the BOCC. *See Black v. Hamilton Cnty. Pub.*, No. 1:12-cv-503, 2013 U.S. Dist. LEXIS 25386, at *12-13 (S.D. Ohio Feb. 25, 2013), adopted, *Black v. Hamilton Cnty. Pub.*, No. 1:12-cv-503, 2013 U.S. Dist. LEXIS 37723 (S.D. Ohio Mar. 19, 2013) (Court did not dismiss the plaintiff's § 1983 claim because the county defendant failed to address the *Monell* requirements.).

### ii. Prima Facie Case

Defendants next argue that Plaintiff's First Amendment retaliation claim fails because Plaintiff cannot show a prima facie case of retaliation. (Defendants' Response in Opp., Doc. 19, Pg. ID 99-101.)

To succeed on a First Amendment retaliation claim against a public employer, the public employee must first make a prima facie case of retaliation. *Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012). A prima facie case of First Amendment retaliation consists of the following elements: (1) the public employee's speech was protected, (2) his employer took an adverse action against him, and (3) his protected speech was a substantial or motivating factor for the adverse action—that is, the adverse

7

action was motivated at least in part by his protected conduct. *Id.* (citation omitted).

Defendants argue that Plaintiff failed to make a prima facie case of First Amendment retaliation because Plaintiff did not engage in protected speech. (Defendants' Response in Opp., Doc. 19, Pg. ID 99-101, 105-06.)

To determine whether speech by a public employee is protected, the Court engages in a three-step inquiry. *Buddenberg v. Weisdack*, 939 F.3d 732, 739 (6th Cir. 2019) (citation omitted). First, the Court "ascertain[s] whether the speech addressed a matter of public concern." *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 143 (1983)). Second, the Court "determine[s] whether the employee spoke as a private citizen or as an employee pursuant to his official duties." *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). Third, the Court "balance[s] the interests of the parties and determine[s] if the employee's speech interest outweighs 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

Defendant maintains that Plaintiff has not met step one or step three of the protected speech analysis. (Defendants' Response in Opp., Doc. 19, Pg. ID 99-101, 105-06.)

## 1.  Step One: Matter of Public Concern

Defendants first argue that Plaintiff has not met step one of the protected speech analysis because Plaintiff did not speak on a matter of public concern. (Defendants' Response in Opp., Doc. 19, Pg. ID 99-101.)

"Speech involves matters of public concern when it can be fairly considered as

8

relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane v. Franks*, 573 U.S. 228, 241 (2014) (quotations omitted). "The mere fact that public monies and government efficiency are related to the subject of a public employee's speech does not, by itself, qualify that speech as being addressed to a matter of public concern." *Barnes v. McDowell*, 848 F.2d 725, 734 (6th Cir. 1988). But the Supreme Court, in citing examples of speech that would involve matters of public concern, has specifically identified statements seeking to "bring to light actual or potential wrongdoing or breach of public trust." *Connick*, 461 U.S. at 148; *see also Garcetti*, 547 U.S. at 425 ("Exposing governmental inefficiency and misconduct is a matter of considerable significance.").

Plaintiff's statements giving rise to his First Amendment retaliation claim relate to matters of public concern. Plaintiff was deposed in connection to McGuffey's lawsuit, which was based on allegations of sex discrimination within the Sheriff's Office. (Am. Compl., Doc. 11, ¶ 13.) The Sixth Circuit has found that allegations of sexual discrimination by a public employer constitute matters of public concern. *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019); *see also Matulin v. Vill. Of Lodi*, 862 F.2d 609, 612-13 (6th Cir. 1988) ("[A]llegations of invidious discrimination by a public employer" based on sex and disability implicate matters of public concern.). Here, even if Plaintiff made statements denying the existence of discrimination at the Sheriff's Office, his speech still ultimately relates to a matter of public concern. *See Bonnell v. Lorenzo*, 241 F.3d 800, 813 (6th Cir. 2001) (Plaintiff could properly allege First Amendment retaliation where he

9

spoke on sexual harassment complaints brought against him.).

Additionally, in Plaintiff's Proposed Second Amended Complaint, Plaintiff alleges that he was also deposed about the use of excessive force in the Hamilton County Jail. (Proposed Second Am. Compl., Doc. 15-1, ¶ 13.) The Sixth Circuit has found that speech on "law enforcement's use of excessive force [constitutes] matters of public concern." *See Boulton v. Swanson*, 795 F.3d 526, 535 (6th Cir. 2015); *see also Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986) ("Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law . . . ."). Thus, Plaintiff's speech made during his deposition for McGuffey's lawsuit relates to matters of public concern.

Defendants argue that Plaintiff's speech must have been broadcasted to the public to constitute a matter of public concern, but this argument lacks merit. (*See* Defendants' Response in Opp., Doc. 19, Pg. ID 101.) To support this contention, Defendants cite to only one case: *Baird v. Hamilton Cnty. Dep't of Job & Family Servs.*, No. 1:16-cv-759, 2019 U.S. Dist. LEXIS 82534 (S.D. Ohio May 16, 2019). In *Baird*, the plaintiff accused the defendants of retaliating against her for statements she made during a court proceeding regarding custody of the plaintiff's grandchild. *Baird*, 2019 U.S. Dist. LEXIS 82534, at *9-14. The *Baird* court found that the plaintiff's statements did not center on matters of public concern—not because they were made during a legal proceeding, but because her statements focused almost exclusively on personal, family matters. *Id.* at *17-28. Nowhere does *Baird* hold that, for speech to be protected, it must be broadcasted to the public. *See id.* To be sure, courts in this circuit have often held the contrary. *See, e.g., Perry v. McGinnis*,

10

209 F.3d 597, 604 (6th Cir. 2000) (A complaint of discrimination made to an employer through an internal grievance process constituted a matter of public concern meriting First Amendment protection.).

Thus, Plaintiff has sufficiently pled that he has engaged in speech on a matter of public concern. In turn, Plaintiff has met step one of the protected speech analysis.

### 2. Step Three: Balance of Interest

Next, Defendants argue that Plaintiff failed to meet step three of the protected speech analysis. (Defendants' Response in Opp., Doc. 19, Pg. ID 105-06.) Specifically, Defendants maintain that Hamilton County's efficiency interests outweigh Plaintiff's free speech interests because Plaintiff acted as a confidential or policymaking employee. (*Id.*)

The Sixth Circuit has held that "where a confidential or policymaking public employee is discharged on the basis of speech related to his political or policy views, the [balancing test] favors the government as a matter of law." *Rose v. Stephens*, 291 F.3d 917, 921 (6th Cir. 2002). "No clear line can be drawn between policymaking and non-policymaking positions." *Elrod v. Burnsi*, 427 U.S. 347, 367 (1976). Still, the Sixth Circuit has identified four categories of employees who always constitute policymaking or confidential employees:

> Category One: positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted;
>
> Category Two: positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary

11

authority commonly held by category one positions in other jurisdictions;

Category Three: confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority or other confidential employees who control the lines of communications to category one positions, category two positions or confidential advisors; and

Category Four: positions that are part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

*Latham v. Off. of the AG*, 395 F.3d 261, 267 (6th Cir. 2005). A determination on whether an employee fits into one of these four categories often involves a fact-intensive inquiry into the employee's role and responsibilities. *See id.*

Relying solely on the pleadings, the Court cannot conclusively determine that Plaintiff was a "confidential or policymaking" public employee terminated for speech relating to his "political or policy views." *See Rose*, 291 F.3d at 923. The proposed pleadings generally allege that Plaintiff made statements about discrimination and excessive force. (*See* Proposed Second Am. Compl., Doc. 15-1, ¶ 13.) Without more, the Court does not know whether those statements related to Plaintiff's political or policy views, or whether they were even the reason that Plaintiff was terminated. Similarly, while the pleadings provide some detail on Plaintiff's role at the Sheriff's Office, the Court cannot yet determine whether these duties made Plaintiff's position one of policymaking or of a confidential nature. In turn, the Court cannot automatically find in favor of Defendants under step three of the protected speech analysis.

Thus, Defendants fail to show that Plaintiff's First Amendment retaliation claim in his Proposed Second Amended Complaint warrants dismissal.

### b. Retaliation in Violation of Title VII and the Ohio Revised Code

Next, in his Proposed Second Amended Complaint, Plaintiff brings claims against Defendants for retaliation in violation of Title VII and the Ohio Revised Code. (Proposed Second Am. Compl., Doc. 15-1, ¶¶ 26-29.) Defendants argue that Plaintiff cannot state a claim for relief against the BOCC for retaliation under Title VII or the Ohio Revised Code because the BOCC is not Plaintiff's employer. (Defendants' Response in Opp., Doc. 11, Pg. ID 106.) Defendants also argue that (1) Plaintiff's Title VII retaliation claim fails because Plaintiff is not an "employee" under Title VII and (2) both claims fail because Plaintiff has not established a causal connection to show retaliation. (*Id.* at Pg. ID 102-03.) The Court will take each argument in turn.

### i. BOCC Liability

Defendants argue that the BOCC cannot be held liable for retaliation under Title VII and the Ohio Revised Code because it is not Plaintiff's employer. (Defendants' Response in Opp., Doc. 19, Pg. ID 106; Motion to Dismiss, Doc. 12, Pg. ID 44-45.)

Both Title VII and the Ohio Revised Code define "employer" in a similar way. *See* 42 U.S.C. § 2000e(b); Ohio Rev. Code § 4112.01(A)(2). "To determine whether a particular defendant is the 'employer' of a plaintiff . . . a court must look to whether the alleged employer exercises control over the manner and means of plaintiff's work." *Nelson v. Clermont Cnty. Veterans' Serv. Comm'n*, No. 1:11-cv-0335, 2012 U.S. Dist. LEXIS 35230, at *12 (S.D. Ohio Mar. 15, 2012) (citing *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 611-12 (6th Cir. 2003)); *see Satterfield v. Tennessee*, 295 F.3d 611, 617 (6th Cir. 2002) ("[T]he most important factor" in evaluating whether an entity is an employer of the plaintiff is

13

"the employer's ability to control job performance and employment opportunities of the aggrieved individual.").

Based on the pleadings, it is plausible that Hamilton County was Plaintiff's employer. Plaintiff is employed by the Sheriff's Office. (Proposed Second Am. Compl., Doc. 15-1, ¶ 4.) The Sheriff's Office is an "arm[] of the government of which [it is] a part." *McGuire*, 253 F. Supp. at 1015. So, the Court can infer that Hamilton County is the employer of the Hamilton County Sheriff's Office's employees. Thus, at this time, the Court will presume that the Hamilton County, which is being sued through the BOCC, is Plaintiff's employer. *See Black v. Hamilton Cnty. Pub.*, 2013 U.S. Dist. LEXIS 25386, at *11-19 (S.D. Ohio Feb. 25, 2013) (Dismissal of county commissioners is not appropriate where it could be inferred by the pleadings that the county was the employer of the plaintiff, who worked at the county's public defender's office.).

In turn, the Court cannot dismiss this claim against the BOCC on the ground that the BOCC is not Plaintiff's employer. This argument, therefore, does not show that Plaintiff's Title VII and Ohio retaliation claims against the BOCC in Plaintiff's Proposed Second Amended Complaint warrant dismissal.

### ii. Employee as Defined by Title VII

Next, Defendants maintain that Plaintiff's Title VII retaliation claim fails because Plaintiff was the "personal staff" of the Sheriff and therefore not an employee under Title VII. (Defendants' Response in Opp., Doc. 19, Pg. ID 102.)

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual" based on his

14

inclusion in a protected class. 42 U.S.C. § 2000e-2(a)(1). Courts have limited Title VII's protections to individuals who are "employees." *Birch v. Cuyahoga Cnty. Prob. Court*, 392 F.3d 151, 157 (6th Cir. 2004). Section 2000e(f) sets forth the parameters for who may be considered an employee in bringing a discrimination claim under Title VII. 42 U.S.C. § 2000e(f). Relevant here, the "personal staff" of an elected official are not considered employees under Title VII. 42 U.S.C. § 2000e(f).

The Sixth Circuit has created a non-exhaustive list of factors to determine whether a plaintiff was employed as the personal staff of an elected official:

> (1) whether the elected official has plenary powers of appointment and removal; (2) whether the person in the position at issue is personally accountable to only that elected official; (3) whether the person in the position at issue represents the elected official in the eyes of the public; (4) whether the elected official exercises a considerable amount of control over the position; (5) the level of the position within the organization's chain of command; and (6) the actual intimacy of the working relationship between the elected official and the person filing the position.

*Horen v. Cook*, 546 F. App'x 531, 534 (6th Cir. 2013) (citations omitted).

Determining whether a plaintiff falls under the personal staff exemption is highly factual and does not lend itself well to disposition on a motion to dismiss. *See Horen*, 546 F. App'x at 534 (The personal staff exemption "is to be construed narrowly and involves a highly factual inquiry."). Without the benefit of discovery, the Court does not have the information necessary to adequately assess the factors detailed above to determine whether the personal staff exemption applies. In turn, the Court declines to consider whether Plaintiff is a personal staff member of Defendants until the parties have had an adequate opportunity to develop a factual record.

Defendants' argument, therefore, does not demonstrate the failure of Plaintiff's Title VII retaliation claim.

### iii. Lack of Causal Connection

Finally, Defendants argue that Plaintiff's Title VII and Ohio retaliation claims fail because Plaintiff has not established a causal connection between Plaintiff's allegedly protected activity and his termination. (Defendants' Response in Opp., Doc. 19, Pg. ID 103.)

To succeed on a retaliation claim under Title VII and the Ohio Revised Code, a plaintiff must allege that (1) he engaged in a protected activity; (2) the exercise of the protected right was known to the defendant; (3) the defendant thereafter took adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997).

Viewing the allegations in the light most favorable to Plaintiff, the Proposed Amended Complaint alleges sufficient factual content to establish a causal connection to demonstrate retaliation. Plaintiff alleges that he discussed discrimination and excessive force during his deposition for McGuffey's lawsuit. (Proposed Second Am. Compl., Doc. 15-1, ¶ 13.) These statements were unfavorable to McGuffey. (*Id.*) Soon after, Defendant McGuffey terminated Plaintiff. (*Id.* at ¶ 15.) Based on these allegations, the Court can reasonably infer that Plaintiff's statements may have been the reason for his termination. *See Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012) ("[A] complaint satisfies the pleading requirements . . . so long as it provides an adequate factual basis for a Title VII

16

[] claim."). Thus, Plaintiff's pleadings sufficiently show a causal connection.

Consequentially, Defendants have failed to show that Plaintiff's Title VII and Ohio retaliation claims in his Proposed Second Amended Complaint warrant dismissal under Rule 12(b)(6).

### c. Sex Discrimination in Violation of Title VII and the Ohio Revised Code

Next, Plaintiff's Proposed Second Amended Complaint presents claims against Defendants for sex discrimination in violation of Title VII and the Ohio Revised Code. (Proposed Second Am. Compl., Doc. 15-1, ¶¶ 30-32.) Defendants again argue that these claims fail against the BOCC because the BOCC is not Plaintiff's employer. (Defendants' Response in Opp., Doc. 19, Pg. ID Pg. ID 105-06.) Defendants also argue that these claims fail because Plaintiff has not alleged a prima facie case of sex discrimination. (*Id*. at Pg. ID 102-04.) The Court will take each argument in turn.

### i. BOCC Liability

Defendants argue that the BOCC cannot be held liable for sex discrimination against Plaintiff because the BOCC is not Plaintiff's employer. (Defendants' Response in Opp., Doc. 19, Pg. ID 106; Motion to Dismiss, Doc. 12, Pg. ID 44-45.) As determined above, it is inappropriate to dismiss the BOCC at this stage on the ground that it is not Plaintiff's employer. Thus, this argument fails.

### ii. Prima Facie Case

Next, Defendants argue that Plaintiff's sex discrimination claim is futile because Plaintiff does not establish a prima facie case of sex discrimination. (Defendants' Response in Opp., Doc. 19, Pg. ID 102-04.)

To present a prima facie case of sex discrimination under Title VII and the Ohio Revised Code, a plaintiff must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) a similarly situated employee outside the protected class or classes was treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Little Forest Med. Ctr. v. Ohio Civil Rts. Com.*, 575 N.E.2d 1164, 1167 (Ohio 1991) (citations omitted).

A plaintiff asserting an employment discrimination claim need not plead facts establishing his prima facie case. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002) ("The prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement."). But the elements of a prima facie case are still aspects courts consider when determining the plausibility of a discrimination claim. *See, e.g., White v. Adena Health Sys.*, No. 2:17-cv-593, 2018 U.S. Dist. LEXIS 114975, at *4 (S.D. Ohio July 11, 2018) (discussing the prima facie elements in the context of a motion to dismiss several Title VII claims). Still, "the ordinary rules for assessing the sufficiency of a complaint apply" and the Court must ultimately determine plausibility of the claim by employing its "judicial experience and common sense." *Swierkiewicz*, 534 U.S. at 511; *Iqbal*, 556 U.S. at 678.

Plaintiff's proposed pleading sufficiently alleges that Defendants discriminated against Plaintiff based on his sex. Plaintiff was employed by the Sheriff's Office. (Proposed Second Am. Compl., Doc. 15-1, ¶ 4.) When McGuffey—a woman—became Sheriff, she terminated Plaintiff and eight other male employees. (*Id.* at ¶¶ 14-15.) McGuffey did not provide reason for these terminations. (*See id.*) Based on these

allegations, the Court can infer that Plaintiff was treated in a particular way based on his sex. In turn, Plaintiff's allegations sufficiently plead a claim of sex discrimination against Defendants.

Defendants, therefore, fail to show that Plaintiff's sex discrimination claims brought under Title VII and the Ohio Revised Code in his Second Amended Complaint fail under Rule 12(b)(6).

### d. Wrongful Discharge in Violation of Public Policy

Finally, Plaintiff's Proposed Second Amended Complaint brings a claim of wrongful discharge in violation of public policy against Defendants. (Proposed Second Am. Compl., Doc. 15-1, ¶¶ 33-40.) Once more, Defendants argue that adding this claim is futile against the BOCC because the BOCC is not Plaintiff's employer. (Defendants' Response in Opp., Doc. 19, Pg. ID 106.) As the Court explained above, such argument fails. Defendants also argue that adding this claim is futile because Plaintiff has not sufficiently pled any violations of public policy. (*Id.* at Pg. ID 104-06.)

"A cause of action for wrongful discharge in violation of public policy is a tort that must be pled by alleging facts demonstrating that an employer's discharge of the plaintiff violated a sufficiently clear public policy." *Urfer v. St. Vincent Med. Ctr.*, No. L-00-1046, 200 Ohio App. LEXIS 4971, at *14 (Ohio Ct. App. Oct. 27, 2000).

Defendants solely argue that Plaintiff cannot show a violation of public policy because Plaintiff cannot show sex discrimination by Defendants. (Defendants' Response in Opp., Doc. 19, Pg. ID 104-06.) As discussed above, Plaintiff's sex discrimination claims against Defendants will proceed. Thus, this argument fails to show the futility of this

claim.

\*　　\*　　\*

Defendants have failed to show that Plaintiff's Proposed Second Amended Complaint would be dismissed under the Rule 12(b)(6) standard. In turn, Defendants fail to show the futility of Plaintiff's proposed amendments. Thus, Plaintiff's Motion to Amend (Doc. 15) must be granted.

II.     **Motion to Dismiss**

The Court now turns to Defendants' Motion to Dismiss (Doc. 12). In this motion, Defendants move to dismiss Plaintiff's Amended Complaint (Doc. 11) under Rule 12(b)(6). (*See* Motion to Dismiss, Doc. 12.) As the Court granted Plaintiff's motion to amend, Plaintiff will soon file a Second Amended Complaint to the docket. In turn, Defendants' motion to dismiss addresses a pleading that will no longer be operative. *See O'Malley*, 2013 U.S. Dist. LEXIS 50970, at \*4 ("An amended complaint supersedes the original pleading, thus rendering motions to dismiss moot."). Thus, Defendants' Motion to Dismiss (Doc. 12) must be denied as moot.

**CONCLUSION**

Based on the foregoing, the Court **ORDERS** the following:

1.  Plaintiff's Motion to Amend (Doc. 15) is **GRANTED**;

2.  Plaintiff **SHALL FILE** his Second Amended Complaint within seven (7) days of this Order. The Second Amended Complaint must contain all of Plaintiff's allegations and claims in one document. The Second Amended Complaint should not incorporate by reference the contents of previous pleadings; and

3.  Defendants' Motion to Dismiss (Doc. 12) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND
