**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION - CINCINNATI**

| | | |
|---|---|---|
| MARK SCHOONOVER, | : | Case No. 1:22-cv-767 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| HAMILTON COUNTY, et al., | : | |
| Defendants. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 33). Plaintiff filed a Response in Opposition (Doc. 37), to which Defendants filed a Reply in Support (Doc. 40). This matter is therefore ripe for the Court's review. For the following reasons, Defendants' Motion for Summary Judgment (Doc. 33) is **GRANTED IN PART**.

## BACKGROUND

Plaintiff Mark Schoonover served as the Chief Deputy of the Hamilton County, Ohio Sheriff's Office from January 2013 until January 2021, under the leadership of former Sheriff Jim Neil. (Neil Decl., Doc. 37-6, Pg. ID 798; McGuffey Letter, Doc. 30-7, Pg. ID 319.) Schoonover began his tenure at the Hamilton County Sheriff's Office in 1981 and held various positions, including roles in the office's corrections division and as a patrol officer. (Second Am. Compl., Doc. 23, ¶ 7; Schoonover Dep., Doc. 30, Pg. ID 203–04.) After Jim Neil was elected Hamilton County Sheriff in 2012, he selected Schoonover to be his

Chief Deputy. (Neil Decl., Doc. 37-6, Pg. ID 798.) As Chief Deputy, Schoonover reported directly to Sheriff Neil and managed the day-to-day operations of the Sheriff's Office, supervising over 900 employees and overseeing the office's court services, enforcement, and corrections divisions. (Schoonover Dep., Doc. 30, Pg. ID 209–11; Second Am. Compl., Doc. 23, ¶ 8.) Schoonover was responsible for implementing the policies adopted by Sheriff Neil, and he served as the sheriff's confidential advisor. (Response to Interrogatories, Doc. 30-11, Pg. ID 336.)

In January 2017, an internal complaint was filed against Defendant Charmaine McGuffey, who served as the major of jail and court services for the Sheriff's Office, alleging that she created a hostile work environment. (Second Am. Compl., Doc. 23, ¶¶ 9–10; Answer, Doc. 24, ¶¶ 9–10.) After an internal investigation of McGuffey's conduct, Schoonover recommended the termination of her employment. (Schoonover Dep., Doc. 30, Pg. ID 239–40.) Sheriff Neil offered McGuffey another position, but after she refused, he terminated her employment on June 1, 2017. (Second Am. Compl., Doc. 23, ¶ 11.) McGuffey subsequently filed a lawsuit, alleging that she was terminated due to her gender or sexual orientation. (*Id.* at ¶ 12; Answer, Doc. 24, ¶ 12.) McGuffey also alleged that Schoonover and other male employees retaliated against her for opposing unlawful employment practices and complaining about the use of excessive force against inmates. (Second Am. Compl., Doc. 23, ¶12; Answer, Doc. 24, ¶ 12.)

As part of McGuffey's lawsuit, Schoonover sat for a deposition in 2019. (Second Am. Compl., Doc. 23, ¶ 13; 2019 Schoonover Dep. Excerpt, Doc. 37-5.) In the deposition, Schoonover denied accusations by McGuffey that he was belittling and derogatory

toward her at staff meetings, that he scrutinized her due to her sexual orientation, and that she was excluded from command staff meetings. (2019 Schoonover Dep. Excerpt, Doc. 37-5, Pg. ID 720, 772–74.) Schoonover also denied McGuffey's accusation that the Sheriff's Office engaged in repeated violations of the office's use-of-force policy, specifically rebutting her description of a particular incident involving an inmate, which he characterized as unsupported by the office's internal investigation. (*Id.* at Pg. ID 711, 718, 777–78.) Finally, Schoonover stated that, based on the evidence gathered by the office's internal investigation of McGuffey, he believed that the termination of her employment was appropriate. (*Id.* at Pg. ID 726–27, 767–68.)

In a turn of events, McGuffey became a candidate for sheriff, running in the Democratic Party's 2020 primary election against the incumbent, Sheriff Neil. (McGuffey Dep., Doc. 31, Pg. ID 363–65.) After winning the primary election and becoming the Democratic Party's nominee, McGuffey was elected sheriff in the November 2020 general election. (*Id.* at Pg. ID 364–65; Second Am. Compl., Doc. 23, ¶ 14.) On December 26, 2020, McGuffey wrote Schoonover a letter, informing him that his employment with the Sheriff's Office would be terminated as of January 4, 2021—the day McGuffey was to take office. (12/26/2020 McGuffey Letter, Doc. 30-7, Pg. ID 319; Second Am. Compl., Doc. 23, ¶¶ 14–15.)

On January 3, 2021, the day before McGuffey took office, outgoing Sheriff Neil appointed Schoonover to the position of special deputy. (Special Deputy Appointment, Doc. 31-2, Pg. ID 432–33.) Special deputies with the Sheriff's Office are unpaid volunteers who can work private security details to earn compensation. (Schoonover Dep., Doc. 30,

Pg. ID 249–50.) The regular practice in the Sheriff's Office at that time was to appoint departing deputies as special deputies, so long as they requested the appointment and were in good standing. (*Id.* at Pg. ID 247–48.) Schoonover did not apply to work any private security details, so he never earned compensation as a special deputy. (*Id.* at Pg. ID 234–35.)

After taking office, Sheriff McGuffey reviewed the employment of all special deputies and asked them to submit applications to continue their service. (Schoonover Dep., Doc. 30, Pg. ID 250.) Schoonover submitted his application on February 8, 2021. (Schoonover Special Deputy Application, Doc. 30-4, Pg. ID 308.) Defendants characterize his application as "unusually short, especially compared to the other applicants." (Schoonover Special Deputy Application, Doc. 30-4, Pg. ID 308; Motion for Summary Judgment, Doc. 33, Pg. ID 489.) Sheriff McGuffey terminated Schoonover's status as a special deputy on March 12, 2021. (3/12/2021 McGuffey Letter, Doc. 30-6, Pg. ID 318.)

On December 26, 2022, Schoonover initiated this action, bringing claims against Defendants for First Amendment retaliation, retaliation under Title VII and Ohio law, sex discrimination under Title VII and Ohio law, and wrongful discharge in violation of public policy under Ohio law. (Second Am. Compl., Doc. 23.) Following discovery, Defendants filed a Motion for Summary Judgment (Doc. 33) on all the claims against them.

## LAW

A court grants summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(a). The moving party has the burden to establish that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If the moving party meets that burden, then it becomes the nonmoving party's responsibility to point to specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A court is under no obligation to search the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996).

Moreover, a "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forth probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Anderson*, 477 U.S. at 251–52; *Lansing Dairy*, 39 F.3d at 1347. If the nonmoving party fails to make the necessary showing for an element on which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## ANALYSIS

Defendants argue that summary judgment should be granted on all claims in this action. (Motion for Summary Judgment, Doc. 33, Pg. ID 485.) The Court addresses Defendants' arguments as to each claim in turn, beginning with Schoonover's First Amendment retaliation claim.

### I. Schoonover's First Amendment Retaliation Claim

Defendants first argue that the Court should grant summary judgment on Schoonover's First Amendment retaliation claim, which he brings under 42 U.S.C. § 1983.

(Motion for Summary Judgment, Doc. 33, Pg. ID 489–97; Second Am. Compl., Doc. 23, ¶¶ 6, 19–28.)

Courts analyze First Amendment retaliation claims under a burden-shifting framework. First, a plaintiff must make a prima facie case of retaliation by demonstrating the following: "(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; [and] (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct." *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012) (cleaned up).

If the plaintiff meets his burden of making a prima facie case of retaliation, the burden then shifts to the defendant "to prove by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010) (cleaned up). "Once this shift occurs, summary judgment is warranted if, in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant." *Id.* (citing *Garvey v. Montgomery*, 128 F. App'x 453, 459 (6th Cir. 2005)). "Unlike in the *McDonnell Douglas* burden-shifting framework, the burden does not shift back to a plaintiff to show pretext in First Amendment retaliation claims." *Dye*, 702 F.3d at 295.

**A. Prima Facie Case of Retaliation**

Defendants assert that Schoonover cannot establish a prima facie case of retaliation. They argue that Schoonover's speech was not protected, and that he fails to show that his dismissal was motivated by his speech. (Motion for Summary Judgment, Doc. 33, Pg. ID 491-95.) The Court addresses both arguments.

**a. Constitutionally Protected Speech**

As noted above, the Court must first consider whether Schoonover engaged in protected speech. Before considering this question, however, the Court must first identify the speech at issue. Defendants purport that the speech Schoonover claims is protected is his recommendation to Sheriff Neil that McGuffey's employment be terminated. (Motion for Summary Judgment, Doc. 33, Pg. ID 491.) But, Defendants are off target in their description of Schoonover's claim—Schoonover instead asserts that his 2019 sworn deposition testimony in McGuffey's lawsuit, which was unfavorable to McGuffey's case, is the protected speech in question. (Second Am. Compl., Doc. 23, ¶¶ 20-21; Response, Doc. 37, Pg. ID 537-38.)

Having identified the speech at issue, the Court turns to whether it is constitutionally protected. Speech by a public employee must meet three criteria to fall under the protection of the First Amendment: (1) the speech addresses a matter of public, not private, concern; (2) the employee speaks as a private citizen, and not pursuant to his official duties; and (3) the employee's interest in speaking outweighs the interest of the employer in running an efficient workplace. *Decrane v. Eckart*, 12 F.4th 586, 594 (6th Cir. 2021) (citing *Connick v. Myers*, 461 U.S. 138, 146-47 (1983); *Garcetti v. Ceballos*, 547 U.S. 410,

421–22 (2006); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). Defendants concede that Schoonover's 2019 deposition testimony addressed a matter of public concern and that Schoonover spoke as a private citizen in sitting for the deposition. (Reply, Doc. 40, Pg. ID 867 n.1.) Thus, the Court's analysis focuses on the third inquiry, which is also known as the *Pickering* balancing test: whether Schoonover's interest in speaking outweighs the interest of the Sheriff's Office in running an efficient workplace.

Complicating the *Pickering* test is the question of whether Schoonover is considered a policymaking employee. "[W]hen an employee is in a policymaking or confidential position and is terminated for speech related to his or her political or policy views, there is a presumption that the *Pickering* balance favors the government." *Silberstein v. City of Dayton*, 440 F.3d 306, 319 (6th Cir. 2006). The Sixth Circuit has outlined four categories of positions that are classified as policymaking/confidential positions:

> **Category One:** positions specifically named in relevant federal, state, county or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted;
>
> **Category Two:** positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;
>
> **Category Three:** confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communication to category one positions, category two positions or confidential advisors.

> **Category Four:** positions that are part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

*Rose v. Stephens*, 291 F.3d 917, 924 (6th Cir. 2002). In categorizing an employee's position, courts look to the "inherent duties of the position, rather than the actual tasks undertaken by the employee." *Latham v. Office of the AG*, 395 F.3d 261, 267 (6th Cir. 2005). "A position need not fit perfectly into one of the generic categories in order to be a confidential or policymaking job." *Silberstein*, 440 F.3d at 319 (cleaned up).

Schoonover alleges that he experienced retaliation in two instances: first, his termination as chief deputy on January 4, 2021, and second, his termination as a special deputy on March 12, 2021. (Second Am. Compl., Doc. 23, ¶¶ 15–17.) Defendants do not argue that the policymaking presumption applies to the position of special deputy, though they do assert that it applies to the chief deputy position. (Motion for Summary Judgment, Doc. 33, Pg. ID 492.) On review, the Court finds that while the position of chief deputy falls into Categories Two and Three, the position of special deputy does not fall into any category and does not receive a presumption in favor of Defendants.

The position of chief deputy in a sheriff's office is a policymaking position where the chief deputy "assumed the sheriff's duties in the sheriff's absence, supervised the deputies, scheduled their shifts, and recommended employees for dismissal to the sheriff." *Hall v. Tollett*, 128 F.3d 418, 425–26 (6th Cir. 1997). Schoonover was responsible for implementing the policies adopted by Sheriff Neil, he served as the sheriff's confidential advisor, and he recommended at least one employee for dismissal. (Response to Interrogatories, Doc. 30-11, Pg. ID 336; Second Am. Compl., Doc. 23, ¶ 10;

Schoonover Dep., Doc. 30, Pg. ID 239–40.) Indeed, Schoonover managed the day-to-day operations of the Sheriff's Office, supervising over 900 employees and overseeing the office's court services, enforcement, and corrections divisions. (Schoonover Dep., Doc. 30, Pg. ID 209–11; Second Am. Compl., Doc. 23, ¶ 8.) The responsibilities that Schoonover held during his tenure with the Sheriff's Office make clear that the chief deputy role is a policymaking position.

"[T]he government has a legitimate interest in securing employees who will loyally implement its policies." *Rose*, 291 F.3d at 922 (citing *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 74 (1990)). And, "[p]ermitting the government to dismiss employees who fall within the policymaking or confidential categories when they voice opinions on political or policy-related issues is an appropriate means of promoting that interest because the government already enjoys the right to choose or dismiss those employees on the basis of their political views." *Id.* Schoonover admits that he and McGuffey did not see eye to eye on the office's policies and procedures relating to use of force. (Schoonover Dep., Doc. 30, Pg. ID 265–71.) Therefore, the policymaking presumption applies to Schoonover in his role as chief deputy. *See Cagle v. Headley*, 148 F. App'x 442, 446 (6th Cir. 2005) ("A sheriff, no less than a governor, is 'entitled to select a person whom he knows to share his political beliefs to occupy a position with such high levels of discretion and policymaking authority.'") The *Pickering* balance test thus presumptively favors Defendants as it relates to the chief deputy position.

In contrast, Defendants do not assert that the policymaking presumption applies to the special deputy position, and the Court observes that the inherent duties of a special

deputy are not reflected by any of the four categories promulgated by the Sixth Circuit. Absent argument from the parties, the Court cannot find that the *Pickering* balance favors Defendants as it relates to the special deputy position—the record and briefing are silent as to the pertinent considerations that the Court must look to in conducting a *Pickering* analysis. *See Bennett v. Metro. Gov't of Nashville & Davidson Cnty.*, 977 F.3d 530, 539–40 (6th Cir. 2020) (cleaned up) ("The pertinent considerations for the balancing test are whether the statement (a) impairs discipline by superiors or harmony among co-workers, (b) has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, (c) impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise, or (d) undermines the mission of the employer."). Therefore, Schoonover engaged in constitutionally protected speech as it relates to the special deputy position, but not as it relates to the chief deputy position.

**b. Defendants' Motivation**

Defendants also contend that Schoonover's attempt to establish a prima facie case of First Amendment retaliation runs aground on the causation element. "[T]o establish a causal connection between the protected conduct and the adverse action, [a] plaintiff must produce enough evidence of a retaliatory motive such that a reasonable juror could conclude that the [adverse employment action] would not have occurred but for his engagement in protected activity." *Eckerman*, 636 F.3d at 209. "A causal link can be shown through direct or circumstantial evidence, including showing temporal proximity between engaging in protected activity and suffering an adverse employment action." *Id.*

"There are, however, no bright-line rules about how much time is sufficient (or deficient)," and "the Court must analyze the timing in context to assess whether it permits an inference about the employer's motivation." *Sullivan v. Ohio State Univ.*, 764 F. Supp. 3d 652, 667 (S.D. Ohio 2025). And, "[w]hen there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation." *Dixon v. Gonzales*, 481 F.3d 324, 335 (6th Cir. 2007) (quoting *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005)); *see also Dye*, 702 F.3d at 305–06 (citing Title VII retaliation cases, including *Dixon*, in articulating the temporal proximity standard in the First Amendment retaliation context). "This is particularly true when the alleged retaliation occurs at the first chance the employer had to take the adverse action in question." *George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020); *see also Smith v. City of Union*, 144 F.4th 867, 878 (6th Cir. 2025) (noting that courts measure "temporal proximity from the employer's 'first opportunity to retaliate' against the plaintiff").

Defendants argue that Schoonover has failed to demonstrate that his dismissal was motivated at least in part by his protected speech. (Motion for Summary Judgment, Doc. 33, Pg. ID 493–95.) Schoonover responds by asserting that McGuffey terminated his employment at the first chance she had, demonstrating temporal proximity. (Response, Doc. 37, Pg. ID 543–45.) Schoonover also argues that McGuffey's past behavior toward subordinates in the workplace is consistent with the alleged retaliation here, offering further evidence of causation. *(Id.* at Pg. ID 545.) Defendants reply by asserting that the timing of Schoonover's dismissal must be viewed in full context, that McGuffey's basis

for dismissing Schoonover did not include the conduct he denies, and that McGuffey's past behavior is evidence of prior bad acts—inadmissible under Federal Rule of Evidence 404(b). (Reply, Doc. 40, Pg. ID 870-76.)

Because Schoonover's First Amendment retaliation claim has already failed as it relates to the chief deputy position, the Court need not address that position here. Turning to the special deputy position, Sheriff McGuffey terminated Schoonover's special deputy status not at her first opportunity, but three months after. (3/12/2021 McGuffey Letter, Doc. 30-6, Pg. ID 318.) This temporal proximity, without more, is insufficient to demonstrate motivation. *See Williams v. Zurz*, 503 F. App'x 367, 373 (6th Cir. 2012) (one-month temporal proximity insufficient to demonstrate motivation); *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (noting that "when other evidence of retaliatory motive is lacking, [the Sixth Circuit has] been reluctant to hold that temporal proximity is sufficient to establish causation"). And, the Court cannot consider McGuffey's prior retaliatory conduct here. *See* Fed. R. Evid. 404(b) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."); *Tranter v. Orick*, 460 F. App'x 513, 514–15 (6th Cir. 2012) (noting that evidence considered by a district court in deciding a motion for summary judgment must be admissible at trial). Therefore, Schoonover's First Amendment retaliation claim also fails as it relates to the special deputy position. Accordingly, summary judgment shall be entered on Schoonover's First Amendment retaliation claims.

## II. Schoonover's Title VII Retaliation and Sex-Discrimination Claims

Defendants next argue that summary judgment should be entered on Schoonover's retaliation and sex-discrimination claims. (Motion for Summary Judgment, Doc. 33, Pg. ID 497–503.) The Court addresses these claims only as they arise under Title VII.

### A. Personal Staff Exemption

Before considering the substance of Schoonover's Title VII retaliation and sex-discrimination claims, the Court must address Defendants' argument that these claims are barred by Title VII's personal staff exemption. (Motion for Summary Judgment, Doc. 33, Pg. ID 497–99.) Title VII's personal staff exception specifically excludes from protection "any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office." 42 U.S.C. § 2000e(f).

The Sixth Circuit has promulgated a non-exhaustive list of factors courts may consider in determining whether the personal staff exemption applies: "(1) whether the elected official has plenary powers of appointment and removal; (2) whether the person in the position at issue is personally accountable to only that elected official; (3) whether the person in the position at issue represents the elected official in the eyes of the public; (4) whether the elected official exercises a considerable amount of control over the position; (5) the level of the position within the organization's chain of command; and (6)

the actual intimacy of the working relationship between the elected official and the person filing the position." *Horen v. Cook*, 546 F. App'x 531, 534 (6th Cir. 2013) (quoting *Walton v. Michigan*, No. 90-1116, 1990 U.S. App. LEXIS 20725, at *6 (6th Cir. Nov. 23, 1990)). "While the exemption for personal staff members is meant to be construed narrowly and involves a highly factual inquiry, summary judgment may still be appropriate when there is no genuine issue of material fact as to the applicability of the relevant factors." *West v. Wayne Cnty.*, No. 2:14-CV-11559, 2016 U.S. Dist. LEXIS 29702, at *5 (E.D. Mich. Mar. 8, 2016) (citation omitted).

Schoonover argues that he should not fall under this exemption because he was never selected by Sheriff McGuffey to serve on her personal staff, and that this matter should be viewed as a failure-to-hire case. (Response, Doc. 37, Pg. ID 550-51.) Additionally, Schoonover argues that even if the personal staff exemption applies to the chief deputy position, it does not apply to the special deputy position. (*Id.* at Pg. ID 550 n.8.) Defendants provide no argument as to why the personal staff exemption should apply to the special deputy position, so the Court therefore considers only whether the personal staff exception applies to the chief deputy position.

The parties agree that Sheriff McGuffey, as an elected official, had plenary power to appoint her own staff. (Motion for Summary Judgment, Doc. 33, Pg. ID 498; Schoonover Dep., Doc. 30, Pg. ID 227.) Schoonover was second in command at the Sheriff's Office, he was responsible for implementing the policies adopted by Sheriff Neil, making personnel recommendations, and giving confidential advice. (Response to Interrogatories, Doc. 30-11, Pg. ID 336; Second Am. Compl., Doc. 23, ¶ 10; Schoonover

Dep., Doc. 30, Pg. ID 239–40; McGuffey Dep., Doc. 31, Pg. ID 367.) And, Schoonover managed the day-to-day operations of the Sheriff's Office, overseeing hundreds of employees and superintending the office's court services, enforcement, and corrections divisions. (Schoonover Dep., Doc. 30, Pg. ID 209–11; Second Am. Compl., Doc. 23, ¶ 8.) With all of this in mind, Schoonover, in his capacity as chief deputy, was a member of the sheriff's personal staff. Schoonover admits that he and McGuffey disagreed about the office's policies and procedures relating to use of force—as with the policymaking exception in the First Amendment retaliation context, the Court is mindful of the purpose of the Title VII personal staff exception and how it applies here. (Schoonover Dep., Doc. 30, Pg. ID 265–71); *see also Gomez v. City of Eagle Pass*, 91 F. Supp. 2d 1000, 1006 (W.D. Tex. 2000) ("The personal staff exception is grounded on Congress' perception that elected officials need complete loyalty from their closest staff members, untainted by the threat of litigation.").

Contrary to Schoonover's argument, framing this matter as a failure-to-hire case does not affect this analysis. *See Born-Smith v. Portage Cnty.*, No. 10-CV-365, 2011 U.S. Dist. LEXIS 170857 (W.D. Wis. May 26, 2011) (applying the personal staff exemption in the analogous Fair Labor Standards Act context when an employee was informed that a newly elected official would not retain them upon taking office). And, in any event, the Second Amended Complaint does not state any claims for failure to hire, so the Court declines to allow Schoonover to advance this theory at this stage. *RJ Control Consultants, Inc. v. Multiject, LLC*, 981 F.3d 446, 454 n.6 (6th Cir. 2020) ("a plaintiff may not expand its claims to assert new theories . . . in response to summary judgment"). Accordingly,

Defendants are entitled to summary judgment on Schoonover's claims for retaliation and sex discrimination brought under Title VII as they relate to the chief deputy position.

**B. Merits of Schoonover's Title VII Retaliation and Sex-Discrimination Claims**

The Court now proceeds to the merits of Schoonover's Title VII retaliation and sex-discrimination claims as they relate to the special deputy position.

**a. Retaliation**

Beginning with Schoonover's Title VII retaliation claim, Defendants first argue that Schoonover cannot establish the requisite prima facie evidence. (Motion for Summary Judgment, Doc. 33, Pg. ID 499–500.) To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) he engaged in protected activity; (2) the defendant knew about his exercise of such protected activity; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). If the plaintiff successfully establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for its actions." *Id.* (quoting *Dixon*, 481 F.3d at 333). The burden then shifts back to the plaintiff to "demonstrate that [the defendant's] proffered reason was not the true reason" for his dismissal. *Id.*

Defendants do not dispute that Schoonover establishes the first three elements of a prima facie case of retaliation, but they contend that he cannot show causation. (Motion for Summary Judgment, Doc. 33, Pg. ID 499–500.) "The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-

specific." *Dixon*, 481 F.3d at 335 (quoting *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 178 (3d Cir. 1997)). "[T]emporal proximity alone is generally not enough to establish the prima facie element of causation." *Wingo v. Mich. Bell Tel. Co.*, 815 F. App'x 43, 46 (6th Cir. 2020). "In other words, plaintiffs alleging retaliation under Title VII and relying on temporal proximity to establish causation must ordinarily support those allegations with other evidence of retaliatory conduct." *Jones v. Sun Chem. Corp.*, No. 1:20-CV-963, 2024 U.S. Dist. LEXIS 184567, at *13 (S.D. Ohio Oct. 9, 2024).

Defendants argue that Schoonover can show no connection between his dismissal and his previous recommendation that McGuffey's employment be terminated, and that the actual reason Sheriff McGuffey fired Schoonover was his failure to adhere to the Sheriff's Office's use-of-force policy. (Motion for Summary Judgment, Doc. 33, Pg. ID 499–500.) But, once again, Defendants are off target in their description of Schoonover's claimed protected activity. Instead, Schoonover alleges that the relevant protected activity is his participation in Hamilton County's defense against McGuffey's lawsuit. (Second Am. Compl., Doc. 23, ¶¶ 31–32; Response, Doc. 37, Pg. ID 552.) Schoonover also contends that Defendants' proffered basis for his dismissal is irrelevant at the prima facie stage, and that the question of causation should be left to a jury. (Response, Doc. 37, Pg. ID 553–54.)

Sheriff McGuffey dismissed Schoonover from the special deputy position three months after her first chance to do so. (3/12/2021 McGuffey Letter.) This temporal proximity, by itself, is insufficient to demonstrate the requisite causation. *See Sizemore v. Edgewood Bd. of Educ.*, No. 1:19-CV-555, 2020 U.S. Dist. LEXIS 67765, at *23 (S.D. Ohio Apr.

17, 2020) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)) (noting that "[t]he Supreme Court has implied that temporal proximity alone is insufficient to establish a causal connection in the retaliation context when there is a lapse of more than three months between the protected activity and the allegedly adverse action"). To the extent Schoonover argues that McGuffey's prior retaliatory conduct is further evidence of causation, Federal Rule of Evidence 404(b) bars this Court from considering that prior conduct for the same reasons as in the First Amendment retaliation analysis above. Therefore, because Schoonover cannot demonstrate causation, he fails to establish a prima facie case of retaliation as it relates to the special deputy position.

The Court also observes that Defendants offer a specific reason for Schoonover's termination from the special deputy position. Defendants assert that Schoonover's application was "unusually short, especially compared to the other applicants." (Schoonover Special Deputy Application, Doc. 30-4, Pg. ID 308; Motion for Summary Judgment, Doc. 33, Pg. ID 489.) Schoonover provides no argument as to why this basis is pretextual. *See Howell v. Stark Cnty. Cmty. Action Agency*, 63 F. Supp. 2d 843, 849 (N.D. Ohio 1999). Accordingly, Defendants are entitled to summary judgment on Schoonover's Title VII retaliation claim as it relates to the special deputy position.

**b. Sex Discrimination**

Proceeding to Schoonover's Title VII sex-discrimination claim, Defendants argue that Schoonover fails to establish a prima facie case of sex discrimination. (Motion for Summary Judgment, Doc. 33, Pg. ID 500–02.) To establish a prima facie case of sex discrimination, a plaintiff generally must "show that they belong to a protected group;

that they suffered an adverse employment action; that they were qualified for the relevant position; and that someone outside the protected group obtained the position or otherwise received more favorable treatment." *Howard v. Cherokee Health Sys.*, No. 24-5981, 2025 U.S. App. LEXIS 22825, at *9 (6th Cir. Sep. 2, 2025); *see also Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 309–13 (2025) (holding that plaintiffs who are members of a so-called majority group, such as men, no longer bear a heightened burden at the prima facie stage, and do not need to establish evidence beyond the standard prima facie requirement).

Defendants contend that Schoonover's attempt to establish a prima facie case of sex discrimination runs aground on the final element, and that he cannot identify a similarly situated employee that was outside the protected class. (Motion for Summary Judgment, Doc. 33, Pg. ID 500–02.) Defendants point out that the only comparator Schoonover identifies is McGuffey, and that the relevant aspects of their employment were quite different. (*Id.* at Pg. ID 501–02 (citing Second Am. Compl., Doc. 23, ¶¶ 11, 34).) In response, Schoonover does not dispute that he cannot use McGuffey as a comparator, and he instead argues that he can establish a prima facie case of sex discrimination without a comparator by showing other evidence of discrimination. (Response, Doc. 37, Pg. ID 554–57.)

Because Schoonover does not provide argument as to Defendants' contention that McGuffey is not a suitable comparator, he concedes this point, and the Court need not analyze it. *See Doe v. Archdiocese of Cincinnati*, No. 1:23-CV-318, 2026 U.S. Dist. LEXIS 48341, at *32 (S.D. Ohio Mar. 9, 2026); *Campbell v. Hines*, No. 12-4329, 2013 U.S. App. LEXIS

26071, at *13–14 (6th Cir. Aug. 8, 2013) ("In light of [the plaintiff's] failure to address the defendants' arguments in his response to the summary judgment motion, the district court properly declined to consider the merits of the claims."). Instead, the Court considers Schoonover's argument that he can establish a prima facie case of sex discrimination without a comparator by showing other evidence of discrimination.

The Sixth Circuit has held that "there may be [sex-discrimination] cases where there is so much evidence of a decision-maker's discriminatory animus that a plaintiff's failure to satisfy the [comparator] element of the *McDonnell Douglas* prima facie case is not fatal to [his] claim." *Birch v. Cuyahoga Cnty. Prob. Court*, 392 F.3d 151, 166 (6th Cir. 2004). "To satisfy the prima facie burden, the evidence must tend to eliminate the most common non-discriminatory reasons for the adverse action and raise an inference that the adverse action was motivated by discriminatory animus." *Hatchett v. Health Care & Ret. Corp. of Am.*, 186 F. App'x 543, 549 (6th Cir. 2006) (cleaned up). Here, Schoonover offers no evidence that he experienced sex-based hostility similar to that in *Birch*, so he fails to raise the necessary inference of discrimination on this basis. *See Tribble v. Memphis City Sch.*, 193 F. App'x 401, 408 (6th Cir. 2006) ("Plaintiff offers no evidence which is analogous to the rampant hostility the Court considered in *Birch*. Plaintiff has therefore failed to raise the necessary inference of discrimination."). Accordingly, Schoonover fails to establish a prima facie case of sex discrimination, and Defendants are entitled to summary judgment on his sex-discrimination claims.

## III. Remaining Claims

Schoonover brings claims for retaliation and sex discrimination under Ohio law, as well as a claim for wrongful discharge in violation of public policy under Ohio law. (Second Am. Compl., Doc. 23, ¶¶ 29–43.) At this juncture, the Court has granted summary judgment for Defendants on all pending federal claims. And, "when a federal court dismisses all pending federal claims before trial . . . it is usually best to allow the state courts to decide state issues." *Kowall v. Benson*, 18 F.4th 542, 549 (6th Cir. 2021). Accordingly, the Court declines to exercise its supplemental jurisdiction over the remaining state-law claims, and they are dismissed without prejudice. *See Mt. Pleasant Blacktopping Co. v. Greene Cnty.*, No. 3:18-CV-417, 2021 U.S. Dist. LEXIS 34162, at *18–21 (S.D. Ohio Feb. 24, 2021).

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

1. Defendants' Motion for Summary Judgment (Doc. 33) is **GRANTED IN PART**;
2. Summary judgment is **ENTERED** in favor of Defendants on Plaintiff's claims for First Amendment retaliation, as well as Plaintiff's claims under Title VII for retaliation and sex discrimination;
3. Plaintiff's state-law claims for retaliation, sex discrimination, and wrongful discharge in violation of public policy are **DISMISSED WITHOUT PREJUDICE**; and
4. This case is hereby **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: Matthew W. McFarland

JUDGE MATTHEW W. McFARLAND